1

```
1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
2                          ORLANDO DIVISION

3    - - - - - - - - - - - - - -X
       UNITED STATES OF AMERICA,    :
4                                   :
                                    :   Case No.:
5            Plaintiff,             :   6:19-cr-26-Orl-41TBS
                                    :
6      vs.                          :
                                    :   Orlando, Florida
7      ROBERT FRANCIS PRATERSCH,    :   April 30, 2019
                                    :   9:12 a.m.
8                                   :
             Defendant.             :
9    - - - - - - - - - - - - - -X

10                 TRANSCRIPT OF TRIAL VOLUME 2 OF 2
11           BEFORE THE HONORABLE CARLOS E. MENDOZA
                    UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14
       Counsel for Plaintiff:        Vincent Chiu
15
       Counsel for Defendant:        Alisha Marie Nair
16

17

18   Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.
19

20   Court Reporter:  Suzanne L. Trimble, CCR, CRR, RPR
                       Federal Official Court Reporter
21                     401 West Central Boulevard, Suite 4600
                       Orlando, Florida 32801
22                     e-mail: trimblecourtreporter@gmail.com

23

24

25
```

2

# T A B L E  O F  C O N T E N T S

PROCEEDINGS                                              PAGE

April 30, 2019

Jury Charge Conference (Continued)................... 3
Reading of Final Jury Instructions.................. 6
Government's Closing Argument By Mr. Chiu........... 16
Defense Closing Argument By Ms. Nair............... 22
Government's Rebuttal Closing Argument By Mr. Chiu... 31
Reading of Final Jury Instructions................. 36
Jury Question...................................... 42
Jury Verdict....................................... 49
Jury Polled........................................ 50

# E X H I B I T S

   NO.                          MARKED/ADMITTED   PAGE

Court's Exhibit 1    marked......................... 48

3

P R O C E E D I N G S

1

2          THE COURTROOM DEPUTY:  This is the case of the

3   United States of America v. Robert Francis Pratersch, Case

4   No. 6:19-cr-26.

5          Will counsel please state their appearances for the

6   record?

7          MR. CHIU:  Good morning, Your Honor.  Vincent Chiu

8   on behalf of the United States.  I'm joined by F.B.I. Special

9   Agent Omar Figueroa.

10          THE COURT:  Good morning.

11          MS. NAIR:  Good morning, Your Honor.  Alicia

12   Marie Nair here on behalf of Mr. Pratersch.

13          THE COURT:  All right.  I've made my decisions as

14   they're reflected in the body of the jury instructions.

15          Mr. Chiu, would you like to be heard on the jury

16   instructions before we get started?

17          MR. CHIU:  No, Your Honor.  The United States has no

18   objections or issues with the jury instructions.

19          THE COURT:  All right.  Ms. Nair?

20          MS. NAIR:  We just maintain our objection, Your

21   Honor, as to our jury instruction, our proposed jury

22   instruction, for threatening a United States official for 18

23   United States Code, Section 115(a)(1)(B).

24          THE COURT:  All right.  And, Ms. Nair, you stated a

25   position of no position on Instruction No. 7.  Are you going

4

1    to make an argument or is that still your position?

2           MS. NAIR:  I have no objection on that one, Your

3    Honor.

4           THE COURT:  All right.  Thank you, Ms. Nair.

5           Mr. Chiu, do you have any objections as to the

6    proposed verdict form that we have this morning?

7           MR. CHIU:  No, Your Honor.

8           THE COURT:  All right.  Ms. Nair?

9           MS. NAIR:  No, Your Honor.

10          THE COURT:  All right.  We're still about 15 minutes

11   away from the jury getting here.  The plan will be that I'm

12   going to read them their instructions, and we'll move right

13   into closing argument.  So I just need to know how much time

14   you're requesting for closing, and then I'm going to leave to

15   give you a chance to collect your thoughts.

16          Starting with Ms. Nair.  How much time do you think

17   you're going to need for closing argument?

18          MS. NAIR:  No more than 20 minutes.

19          THE COURT:  All right.  Twenty minutes.

20          How about you, Mr. Chiu?  You probably want to save

21   time for your rebuttal.

22          MR. CHIU:  Yes, Your Honor.  I would ask for 25 to

23   be safe.

24          THE COURT:  All right.  Why don't we do this?  I'll

25   give you both 30.

5

1          And I'll break yours to 20 and 10.

2          MR. CHIU:  Thank you, Your Honor.

3          THE COURT:  All right.  So if you need anything, let

4    Ms. Darleen know, but otherwise, when Ms. Darleen tells me

5    that the jury is here and accounted for, we will get started.

6    Court's going to stand in recess.  Thank you.

7       (Recess at 9:14 a.m. until 9:42 a.m.)

8          THE COURT:  All right.  Mr. Chiu, are we ready?

9          MR. CHIU:  Yes, Your Honor.

10         THE COURT:  Ms. Nair, are you ready?

11         MS. NAIR:  Yes, Your Honor.

12         THE COURT:  All right.  Let's bring the jury in.

13         THE COURTROOM SECURITY OFFICER:  All rise for the

14   jury.

15         THE COURT:  Ms. Nair and Mr. Chiu, while the jury is

16   coming in, would you be kind enough to approach sidebar?

17      (The jury entered the courtroom at 9:42 a.m.)

18      (At the bench.)

19         THE COURT:  I forgot to ask.  Do you want to renew

20   your motion for judgment of acquittal?

21         MS. NAIR:  Yes, Your Honor.

22         THE COURT:  All right.  And your same position?

23         MR. CHIU:  Yes, Your Honor.

24         THE COURT:  All right.  It's has been renewed.  It's

25   going to be denied, but it's preserved.

1           MS. NAIR:  Thank you, Your Honor.

2       (In open court.)

3           THE COURT:  All right.  Please be seated in the

4   courtroom.

5           Ladies and gentlemen of the jury, are there any

6   matters of concern to report to the Court?  If so, please

7   indicate by raising your hand at this time.  All right.  None

8   of the jurors have raised their hands.

9           All right.  As I indicated yesterday, I'm going to

10  read you your instructions on the law.  You don't need to take

11  notes or memorize anything I'm reading to you because these

12  instructions will accompany you during your deliberations.  I

13  also have a verdict form that will go back for you that's been

14  prepared already, and you'll also receive a copy of the

15  indictment.

16          Members of the jury, it is my duty to instruct you

17  on the rules of law that you must use in deciding this case.

18  After I have completed these instructions, you will go to the

19  jury room and begin your discussions, what we call your

20  deliberations.  You must decide whether the Government has

21  proved the specific facts necessary to find the defendant

22  guilty beyond a reasonable doubt.

23          Your decision must be based only on the evidence

24  presented here.  You must not be influenced in any way by

25  either sympathy for or prejudice against the defendant or the

7

1    Government.

2           You must follow the law as I explain it, even if you

3    do not agree with the law, and you must follow all of my

4    instructions as a whole.  You must not single out or disregard

5    any of the Court's instructions on the law.

6           The indictment or formal charge against the

7    defendant is not evidence of guilt.  The law presumes every

8    defendant is innocent.  The defendant does not have to prove

9    his innocence or produce any evidence at all.  The Government

10   must prove guilt beyond a reasonable doubt; if it fails to do

11   so, you must find the defendant not guilty.

12          The Government's burden of proof is heavy, but it

13   does not have to prove the defendant's guilt beyond all

14   possible doubt.  The Government's proof only has to exclude

15   any reasonable doubt concerning the defendant's guilt.  A

16   reasonable doubt is a real doubt based on your reason and

17   common sense after you have carefully and impartially

18   considered all of the evidence in the case.

19          Proof beyond a reasonable doubt is proof so

20   convincing that you would be willing to rely and act on it

21   without hesitation in the most important of your own affairs.

22          If you are convinced that the defendant has been

23   proved guilty beyond a reasonable doubt, say so; if you are

24   not convinced, say so.

25          As I said before, you must consider only the

8

evidence that I have admitted in the case.  Evidence includes

the testimony of witnesses and the exhibits admitted, but

anything the lawyers say is not evidence and is not binding on

you.  You should not assume from anything I have said that I

have any opinion about any factual issue in the case.  Except

for my instructions to you on the law, you should disregard

anything I may have said during the trial in arriving at your

own decision about the facts.  Your own recollection and

interpretation of the evidence is what matters.

In considering the evidence, you may use reasoning

and common sense to make deductions and reach conclusions.

You should not be concerned about whether the evidence was

direct or circumstantial.  Direct evidence is the testimony of

a person who asserts that he or she has actual knowledge of a

fact such as an eye witness.  Circumstantial evidence is proof

of a chain of facts and circumstances that tend to prove or

disprove a fact.  There is no legal difference in the weight

that you may give to either direct or circumstantial evidence.

When I say you must consider all of the evidence, I

do not mean that you must accept all of the evidence as true

or accurate.  You should decide whether you believe what each

witness had to say and how important that testimony was.  In

making that decision, you may believe or disbelieve any

witness in whole or in part.  The number of witnesses

testifying concerning a particular point does not necessarily

9

1    matter.

2            To decide whether you believe any witness, I suggest

3    that you ask yourself a few questions:

4            Did the witness impress you as one who was telling

5    the truth?

6            Did the witness have any particular reason not to

7    tell the truth?

8            Did the witness have a personal interest in the

9    outcome of the case?

10           Did the witness seem to have a good memory?

11           Did the witness have the opportunity and ability to

12   accurately observe the things he or she testified about?

13           Did the witness appear to understand the questions

14   clearly and answer them directly?

15           Did the witness's offer -- did the witness's

16   testimony differ from other testimony or other evidence?

17           You should also ask yourself whether there was

18   evidence that a witness testified falsely about an important

19   fact and ask whether there was evidence that at some other

20   time, a witness said or did something or did not say or do

21   something that was different from the testimony the witness

22   gave during this trial.  But keep in mind that a simple

23   mistake does not mean a witness was not telling the truth as

24   he or she remembers it.  People naturally tend to forget some

25   things or remember them inaccurately.

So if a witness misstated something, you must decide whether it was because of an innocent lapse of memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

You have been permitted to take notes during the trial.  Most of you, perhaps all of you, have taken advantage of that opportunity.  You must use your notes only as a memory aid during deliberations.  You must not give your notes priority over your own independent recollection of the evidence, and you must not allow yourself to be unduly influenced by the notes of other jurors.  I emphasize that notes are not entitled to any greater weight than your impressions or memories about the testimony.

If the Government offers evidence that a defendant made a statement or admission to someone after being arrested or detained, you must consider that evidence with caution and great care.  You must decide for yourself, one, whether the defendant made the statement; and, two, if so, how much weight to give to it.  To make these decisions, you must consider all of the evidence about the statement, including the circumstances under which it was made.

During the trial you heard evidence of acts allegedly done by the defendant on other occasions that may be similar to acts which the defendant is currently charged.  You

1   must not consider any of this evidence to decide whether the

2   defendant engaged in the activity alleged in the indictment.

3   This evidence is admitted and may be considered by you for the

4   limited purpose of assisting you in determining whether the

5   defendant, one, had the state of mind or intent necessary to

6   commit the crime charged in the superseding indictment; two,

7   had a motive or the opportunity to commit the acts charged in

8   the superseding indictment; three, acted according to a plan

9   or in preparation to commit a crime; or four, committed the

10  acts charged in the superseding indictment by accident or

11  mistake.

12         You will see that the superseding indictment charges

13  that a crime was committed on or about a certain date.  The

14  Government does not have to prove that the offense occurred on

15  an exact date.  The Government only has to prove beyond a

16  reasonable doubt that the crime was committed on a date

17  reasonably close to the date alleged.

18         The word "knowingly" means that the act was done

19  voluntarily and intentionally and not because of mistake or by

20  accident.

21         It is a federal crime to assault, kidnap, or murder

22  a United States official with the intent to impede,

23  intimidate, or interfere with the official's performance of

24  official duties or the intent to retaliate against the

25  official on account of the official's performance of official

1    duty.

2          A United States senator is a United States official.

3    The defendant can be found guilty of this crime only if all of

4    the facts are proved beyond a reasonable doubt.

5          And there are two elements to this offense.  Element

6    number one, The defendant knowingly threatened to assault,

7    kidnap, or murder the official described in the indictment.

8    And element number two, That the defendant made the threat

9    with either, (A) The intent to impede, intimidate, or

10   interfere with such official while he was engaged in the

11   performance of official duties, or (B) With the intent to

12   retaliate against such official on account of performance of

13   official duties.

14         The Government must prove beyond a reasonable doubt

15   that the victim was a United States official.  It does not

16   matter whether the defendant knew at the time of the alleged

17   threat that the victim was a United States official.

18         The word "knowingly" means that the act was done

19   voluntarily and intentionally and not because of mistake or by

20   accident.

21         A threat is a serious expression of intent to

22   inflict bodily injury or murder made under the circumstances

23   that would cause apprehension in a reasonable person as

24   distinguished from mere idle or careless talk, exaggeration,

25   or something said in a joking manner.  There is no requirement

1    that the actual recipient testify.

2             It is a federal crime to knowingly send interstate

3    commerce -- send in interstate commerce a true threat to

4    injure any person.  The defendant can be found guilty of this

5    crime only if the following facts are proved beyond a

6    reasonable doubt.  And again, these are the elements and there

7    are two of them:  Element number one, The defendant knowingly

8    sent a message in interstate commerce containing a true threat

9    to injure the person of another; and two, second element, The

10   defendant sent the message with the intent to communicate a

11   true threat or with the knowledge that it would be viewed as a

12   true threat.

13            The Government does not have to prove that the

14   defendant intended to carry out the threat.  To transmit

15   something in interstate commerce means to send it from a place

16   in one state to a place in another state.

17            A true threat is a serious threat, not idle talk, a

18   careless remark or something said jokingly that is made under

19   circumstances that would place a reasonable person in fear of

20   being injured or another person being injured.

21            You have heard evidence that the defendant may have

22   been intoxicated at the time of the offense charged in the

23   superseding indictment.  Intoxicated means being under the

24   influence of alcohol or drugs or both.  Intoxication is not

25   itself a legal defense to a criminal charge; however, some

14

degrees of intoxication may prevent a person from having the
requisite intent or culpable state of mind to commit the
offense the Government must prove.  If you find that the
defendant was intoxicated to the point that you have a
reasonable doubt as to whether he had the requisite intent or
culpable state of mind to commit the offense, then you may --
then you must find the defendant not guilty of both offenses.

On the other hand, if you believe that the defendant
was intoxicated to some degree, but find that he was capable
of and did have the requisite intent or culpable state of mind
and you find that the Government proved each element of the
offense beyond a reasonable doubt, then you may find the
defendant guilty of both offenses.

Each count of the superseding indictment charges a
separate crime.  You must consider each crime and the evidence
relating to it separately.  If you find the defendant guilty
or not guilty of one crime, that must not affect your verdict
for any other crime.

I caution you that the defendant is on trial only
for the specific crimes charged in the superseding indictment.
You are here to determine from the evidence in this case
whether the defendant is guilty or not guilty of those
specific crimes.

You must never consider punishment in any way to
decide whether the defendant is guilty.  If you find the

1   defendant guilty, the punishment is for the judge alone to

2   decide later.

3          Members of the jury, Exhibits 4 through 6 have been

4   identified as a typewritten transcript of the oral

5   conversation heard on the tape recording received in evidence

6   as Exhibits 1 through 3.  I have admitted the transcript for

7   the limited and secondary purpose of helping you follow the

8   content of the conversation as you listen to the tape

9   recording, but you are specifically instructed that whether

10  the transcript correctly reflects the content of the

11  conversation is entirely for you to decide based on your own

12  examination of the transcript in relation to hearing the tape

13  recording itself as the primary evidence of its own contents.

14  If you determine that the transcript is in any respect

15  incorrect or unreliable, you should disregard it to that

16  extent.

17         Both the parties have rested their case.  The

18  attorneys will now present their final arguments.  Please

19  remember that what the attorneys say is not evidence or your

20  instruction on the law; however.  Do listen closely to their

21  arguments.  They are intended to aid you with understanding

22  the case.

23         Each side will have equal time to make their

24  arguments, but the Government is entitled to divide this time

25  between an opening argument and a rebuttal argument after the

16

1    defense has spoken.

2            All right.  Mr. Chiu, are you prepared to make your

3    closing argument?

4            MR. CHIU:  Yes, Your Honor.

5            THE COURT:  Feel free to proceed.

6            MR. CHIU:  Thank you.

7            THE COURT:  I'll start the clock when you begin

8    speaking.

9            MR. CHIU:  Thank you, Your Honor.

10           Members of the jury, this is a simple,

11   straightforward case.  On October 29, 2018, the defendant left

12   three messages at the Burlington, Vermont senate office of

13   Bernie Sanders threatening to kill the senator.

14           Now you've heard the evidence.  At 4:43 p.m., this

15   is a Saturday afternoon, the defendant calls.  The answering

16   machine tells him something to the effect that it's the office

17   of Senator Bernie Sanders and offers him the opportunity to

18   leave a message for Senator Sanders.  In response, he leaves

19   this message.

20           If we can play Exhibit 1, please?

21      (The above referenced exhibit was published.)

22      So after this message, a half hour passes approximately

23      and the defendant leaves another message.

24      If we can go to Exhibit 2, please.

25      (The above referenced exhibit was published.)

17

1            Notice, half an hour passes, and he references

2   the first message in his second message because in his first

3   message, he talks about cutting his head off.  In the second

4   message he references back and asks him how that knife is

5   going to feel when he does it.

6            Now, if we can go to the Exhibit 3; this

7   happens one minute later.

8      (The above referenced exhibit was published.)

9            Now one little thing to note in this last

10  message is, he makes it clear he's hearing the -- he's

11  hearing that voice mail message, leave your name and number

12  and we'll get back to you.

13            So we've got two counts, here and they're

14  fairly straightforward.  The elements of Count 1, which the

15  Court has already informed you of, but I think it's important

16  and bears repeating because this is really what it comes down

17  to.  So the elements of Count 1 are:  The defendant knowingly

18  threatened to assault, kidnap, or murder the official

19  described in the indictment, that is, Senator Bernie Sanders.

20  And two, if the defendant made the threat with either the

21  intent to impede, intimidate, or interfere with such official

22  while he was engaged in the performance of official duties,

23  or with the intent to retaliate with such official on account

24  of the performance of official duties.

25            The elements of Count 2, It's a very similar

1   offense, same episode, but slightly different in the sense

2   that the elements of Count 2 are, the defendant knowingly

3   sent a message in interstate commerce containing a true

4   threat to injure the person of another, and the defendant

5   sent the message with the intent to communicate a true threat

6   or with the knowledge that it would be viewed as a true

7   threat.

8            Now, let's cover the easy stuff.  I mean,

9   there's little dispute about a couple of things that -- I

10  think at this point, I think we can -- it's safe to say that

11  there's little dispute that the defendant is the person who

12  left these messages.  And I think there is little dispute

13  that the messages contained threats to murder or behead

14  Senator Bernie Sanders, and I think there's little dispute

15  that the calls were made from Osceola County to Burlington,

16  Vermont.

17           Now, the question for you, the main question

18  for you is intent.  Right?  On Count 1, did he intend to

19  impede, intimidate, or interfere with Senator Sanders'

20  conduct of official duties?  And Count 2, did he intend to

21  threaten Senator Sanders?

22           Let's start with Count 2 first because I think

23  that's going to be the more straightforward one.  Were these

24  messages intended to threaten?  Well, I mean, let's look at

25  the -- let's look at the text of the message.

19

1        "We're going to behead you ISIS style,

2  videotaped for the world to see."  Now, that seems pretty

3  simple on its face, but even if you dig deeper, I think you

4  find the intent a little bit more.  "We," so he's not saying

5  I'm going to.  He's creating this fake we, this fake group,

6  you know, to -- that's going to do this act.  He references

7  ISIS to illustrate what he's going to do, and he talks about

8  how he's going to humiliate Senator Sanders as well, by

9  videotaping it and showing it for the world to see.

10        So in case the message didn't get across in

11  that first message, he calls back 30 minutes later.  Now,

12  he's had some time to think about it I guess at this point,

13  but he feels like, apparently, he needs to reenforce the

14  threat, and he says -- asks the senator, how is that knife

15  going to feel cutting your head off?  And in case that didn't

16  get clear enough, a minute later, he calls back and says,

17  "You're dead.  You're fucking dead."

18        I think you can look at the -- at just the

19  bare text of these threats, and that tells you what the

20  intent is.  This isn't -- this isn't a joke; this isn't

21  something said in jest; this isn't a misunderstanding.

22        Now, let's look at Count 1.  Did he intend to

23  intimidate Senator Sanders in the performance of his official

24  duties?

25        MS. NAIR:  Objection, Your Honor, misstatement of

20

1   the law.

2          THE COURT:  All right.  I'm going to let him

3   continue with his argument.  If you'd like to come and

4   elaborate sidebar, you're welcome to do that.

5          MS. NAIR:  Yes, Your Honor.

6      (At the bench.)

7          MS. NAIR:  Mr. Chiu has said it twice now "in the

8   performance of his duties," which the law that the Court just

9   instructed the jury on is, "while in the performance," which

10  is the exact law that Mr. Chiu asked for to be included in the

11  jury instructions and he keeps misstating the law.

12         THE COURT:  Response.

13         MR. CHIU:  At the/while; I think it says the same

14  thing.

15         THE COURT:  I don't find it misleading or offensive.

16  You can hammer that home on your argument.  Point well taken,

17  but I'm going to overrule the objection.

18     (In open court.)

19         THE COURT:  All right.  Thank you, Counsel.

20         Mr. Chiu, you're invited to continue with your

21  closing argument.

22         MR. CHIU:  Thank you, Your Honor.

23         So, you know, did he intend to intimidate

24  Senator Sanders while in the performance of his official

25  duties?  Well, he left these messages at his senate office.  I

1   mean, he didn't just yell at a guy who happened to be

2   Senator Bernie Sanders.  It's not like Senator Bernie Sanders,

3   you know, cut the defendant off in traffic and he yelled some

4   threats at him and, you know, didn't realize he was yelling at

5   a senator.  He called his senate office.  He listened to the

6   voice mail message three times saying that this is the office

7   of Senator Bernie Sanders.  He didn't do it once.  He didn't

8   do it twice.  He did it three times.

9           Let's cut to the chase.  When you leave a message at

10  someone's work threatening to cut their head off, you intend

11  to intimidate and interfere with them while in the performance

12  of their official duties.

13          Now, you've heard some evidence of intoxication, and

14  the Court has instructed you as to how to consider that.  You

15  know, what you've heard, though, is evidence of something, but

16  it's not evidence of the right thing.  I mean, you've heard

17  evidence that, you know, his two brothers and his

18  sister-in-law think that he sounds drunk on these calls, but

19  as the Court has already instructed you, intoxication is not

20  itself a legal defense.

21          So the fact that he's drunk isn't what -- isn't

22  what -- the allegation that he's intoxicated isn't the issue

23  for you.  The question is not whether or not he was

24  intoxicated.  The question is not whether or not he would have

25  done this if he was not drinking.  The question is this:  Did

22

1    he have the intent to threaten?  Did he have the intent to

2    intimidate?  And you can consider whether he was drinking in

3    determining that.  And the question is whether he was

4    intoxicated to a degree that he was unable to have that

5    intent.

6            I mean, listen to the calls and ask yourself, is

7    there any other intent he could have possibly had?  Was he so

8    drunk that he was telling a bad joke and it's just coming

9    across wrong?  Was he so drunk that he was just trying to make

10   this artistic statement that is -- that's coming out as a

11   threat?  No.  I mean, you heard the threats.  You know what

12   this is.  He threatened to cut off Senator Sanders' head.

13           He called back 30 minutes later and asked him how

14   that knife was going to feel when he cut his head off.  He

15   calls back again and says, you're dead.  These are the words

16   of a man who knows what he is trying to say.  And the evidence

17   speaks for itself.  It proves beyond a reasonable doubt that

18   he made these threats and that he intended them to be threats.

19   The only reasonable verdict you can render here is guilty.

20   Thank you.

21           THE COURT:  All right.  Thank you, Mr. Chiu.

22           Ms. Nair, would you like to make a closing argument?

23           MS. NAIR:  Yes, Your Honor.

24           THE COURT:  All right.  Feel free to proceed.

25           MS. NAIR:  Eighteen to 20 hours every day for the

23

last two years, with the exception of him being in a hospital, he sat in a chair.  He sat in a chair, and in the morning he would wake up, he would do his daily duties, and then he would begin drinking sometimes at 12:00, sometimes at 2:00, but always by 3:00.  He would be drinking vodka.  For the last two years straight, he would go to the store, he would get the vodka from the corner store, go back to his chair and drink and watch TV.

Someone once said to me that you can always find someone in the world to agree with the position that you take. That's because we all have our own biases, we all have our own opinions, and no matter what you do, when you go on to any social media, you find someone who is going to agree with your position, and you find someone who is going to disagree with your position.

When we come here, we don't leave our experiences at the door.  We bring them with us.  And that's why some people say don't watch Fox news.  Why?  It skews to the right.  Don't watch CNN.  Why?  It skews to the left.  Don't listen to certain programs because they will bring out inflammatory ideas inside of you.  The election of 2016, we have all of these arguments because.  Why?  They tried to influence the election through what you viewed on social media.

He sat in front of a TV for 18 to 20 hours a day, and when he was interviewed in October, he didn't remember

24

1   making the calls.  He said, I could have.  Why?  Because I

2   live alone.  It's my -- you're showing my phone number.

3   There's no one else here.  I don't have any friends.  All of

4   my friends have died.  No one comes over and visits me.  I

5   take care of my cats.  So if you're showing me a transcript,

6   then I must have done it.  I don't know why I would have done

7   it.  I don't have anything against Bernie Sanders.  I don't

8   have anything against any of the politicians.

9            The Government brought up something about

10  Mr. Nelson, when Mr. Nelson was a senator and calls that he

11  made.  And he tried to get Mr. Pratersch to agree that he left

12  some angry message with him.  But he didn't.  He said, Okay,

13  it's your time.  You've lost the race.  You should retire.

14  That's not angry.  That's not belligerent.  That's not

15  threatening.  Trust me, had it been something that was

16  threatening, you would have seen it.  There's no way that they

17  would have let that stay out.

18           There's no pattern here of him calling individuals

19  and making threatening statements.  You have an individual who

20  was intoxicated to a degree that he could not have formed the

21  intent to knowingly make threats against the Government,

22  against Mr. Sanders.

23           The Judge has already instructed you that you will

24  have the instructions when you go back with you and look at

25  them.  Superseding indictment means it came after.  There was

25

1  an original indictment and then they superseded, right?  Why?

2  To add a charge because the first one wasn't sufficient

3  because there's no way that the Government could --

4         MR. CHIU:  Objection, Your Honor.

5         THE COURT:  Basis for the objection?

6         MR. CHIU:  That is arguing facts that are not in the

7  record.

8         THE COURT:  All right.  Would both of you please

9  approach?

10     (At the bench.)

11        THE COURT:  You want to steer clear of criticizing

12  the charging decision is what his objection is.  Is that what

13  you're about to do?

14        MS. NAIR:  I just said that they superseded.

15        MR. CHIU:  She's using that to infer that the

16  Government somehow endorses a weakness in the case which --

17        THE COURT:  I think she can make that argument.  I

18  just don't want her to criticize your charging decision.

19  Okay.

20        MR. CHIU:  Thank you, Your Honor.

21     (In open court.)

22        THE COURT:  All right.  Thank you both.

23        Ms. Nair, you're certainly welcome to continue.

24        MS. NAIR:  Thank you.

25        When you look at the first charge that you're to

26

1   consider, which is threatening a United States official, look

2   at that charge, read it.  Knowingly threatened to assault.

3   Knowingly.  Was he intoxicated to the degree that he could not

4   have formed that knowing intent to threaten someone?  You

5   don't leave your experiences at the door.  We all know someone

6   who has been intoxicated to a degree that they don't remember

7   what they said or why they said it.  But it goes further

8   because it's not just the intoxication because whether he was

9   intoxicated or sober, we don't get past the second element of

10  this offense.

11          The second element is that Mr. Pratersch made the

12  threat with either the intent to intimidate the official while

13  he was engaged in the performance of his official duties --

14  while he was engaged in the performance of his official

15  duties.  I don't care what way the Government twists that or

16  turns that and makes you think it's something different.  You

17  have the ability to have common sense that the person who came

18  in to testify said she doesn't know if Mr. Sanders was in the

19  office.  She doesn't know if Mr. Sanders had any speaking

20  engagements.  She doesn't know if Mr. Sanders was there the

21  day before or the day after.  The interns are the ones who

22  answer the phone or listen to the voice messages and then pass

23  it on to someone else, who then passes it on to someone else,

24  and we still don't even know if it got to the actual senator

25  himself.  We all can take our own common experiences with us.

27

1   When we call our senator, we don't expect to hear our senator.

2   We don't expect for him to answer the phone and say, how may I

3   help you today?  Can I be of service to you?  You don't get to

4   just walk into your senator's office and speak directly to

5   your senator.  No one in the American population believes that

6   to be true.

7          It would be a different story if you were on the

8   Senate floor yelling some obscenity at the senator.  It would

9   be different if you were in a courthouse yelling at a federal

10  judge who was a federal official some obscenity.  It would be

11  different if you were intending for that threat to go directly

12  to that individual.

13         So whether Mr. Pratersch was intoxicated or not, I

14  don't think we get above or past the second element of that

15  offense.  But that's okay because the Government has Count 2

16  for the same exact offense with the same exact language that

17  they keep playing.

18         Mr. Pratersch is embarrassed, ashamed of the

19  language that you-all had to hear.  And I'm not asking you to

20  like Mr. Pratersch.  I don't like the words that came out of

21  his mouth.  It is not about liking someone or disliking

22  someone.  It is not about sympathy for Mr. Pratersch or his

23  background or sympathy for Mr. Sanders for receiving these

24  threats.  He is embarrassed and ashamed of his language and

25  the calls themselves.  And most people who are intoxicated are

28

1   ashamed of their behavior afterwards.

2          But, again, they have Count 2, Interstate

3   transmission of threat to kidnap or injure.  Again, that one

4   says that Mr. Pratersch knowingly sent a message.  Knowingly.

5   And if he was so intoxicated that he couldn't have formed that

6   requisite intent, it is okay.  You must find him not guilty.

7          The Government instructed you -- or argued -- I

8   shouldn't say instructed -- they argued that it's not whether

9   he was intoxicated.  It's not whether his family came in and

10  said he was intoxicated, it's whether he could have formed

11  that intent.  But that's not what the Judge instructed you on.

12  That's not the what the law says.  And I'm going to read to

13  you just a part of the law.

14         If you find that Mr. Pratersch was intoxicated to

15  the point that you have a reasonable doubt as to whether he

16  had the requisite intent or culpable state of mind to commit

17  the offense, then you must find him not guilty of both

18  offenses.  If you have a reasonable doubt, a doubt that you

19  can attach to, you can say, well, yeah, if he was that

20  intoxicated, his --

21         Both of his brothers came in.  They're estranged

22  from him.  They don't have any reason to lie for him.  His

23  sister-in-law came in.  She's known him all his life.  They're

24  saying, Yeah, it's clear he's intoxicated.  Pills, medicine,

25  or alcohol.  He has a slurred speech naturally, but the anger

29

1   in his voice let's me know, yes, he was drunk.  He was

2   intoxicated, and it's likely he wouldn't have even remembered

3   doing it.  That's a doubt.  You have family members coming in

4   and telling you that he has a habit of doing this in the past,

5   and they have to remind him that he even did it.

6          You have an agent coming in and telling you that

7   they had to show him the transcript of his language to refresh

8   his memory to see if he even made the call.  And that the

9   first time he heard it in full was five months after the

10  incident itself.  Five months.

11         I don't take the words in those calls lightly at

12  all.  As a whole, the voice mails together were taken as a

13  threat.  Ms. Hasler came in and testified that the third

14  message didn't even say, like, a true threat, she just took it

15  as a whole with the other two messages that were left.

16         It's likely that Mr. Pratersch didn't even remember

17  making the first call, which is why he probably called back

18  the second time and the third time because he was probably so

19  intoxicated that he didn't even remember doing it the first

20  time.

21         And then you can look at the evidence.  You can look

22  at the phone records and see that after that last call, there

23  were no more calls for that day.  Why?  Probably because he

24  passed out and went to sleep because he was probably so drunk

25  at that time of day that there were no other messages or calls

30

1    in or out.

2         It is not necessary in this case to split the baby.

3    It is not necessary to say, not guilty on Count 1 and guilty

4    on Count 2.  That's not sending a message to anyone.

5         It's not sending a message to say, well, if you were

6    so intoxicated, you can leave a message and get off later and

7    walk away scot-free and have no penalties.  It is not saying

8    that either.  You don't have to do that.  If you have

9    reasonable doubt that he formed the intent with the

10   intoxication that he was under, you can say not guilty; you

11   must say not guilty to both.

12        This is always the hardest part for me because, as

13   the Judge instructed you before, the Government gets to go

14   first and last because they have a burden, and the Judge

15   instructed you that their burden is heavy because it's beyond

16   a reasonable doubt.  That is heavy.  I appreciate the

17   Government's burden.  But I also appreciate Mr. Pratersch's

18   liberty.

19        He is standing before you, fighting against the

20   entire United States of America.  He is standing fighting

21   against the charges for something that he does not even

22   remember doing.

23        When I sit down, the Government gets to get up and

24   basically cut against almost everything I've said, if they

25   choose to.  But what I know from you and my experience in

1    doing this is that when you go back there, you get to talk

2    amongst yourselves.  You get to look at all of the evidence.

3    You get to take all of your experiences with you.

4           Mr. Pratersch was not an individual who -- they said

5    they viewed it as a true threat, but a month later is when

6    they actually interviewed him.  Even though they had all of

7    the information up front, they interviewed him in October.

8    They arrested him in February.

9           And when they came in February, he still had the

10   same phone, and he gave it to them voluntarily.  The

11   Government admitted that into evidence, that he consented to

12   searching the phone.

13          He was not such a threat to anyone.  And he didn't

14   call after and he didn't call before.  There is no denying

15   that he called this time, but he was intoxicated with the

16   pills that he took and the alcohol that he drank to the degree

17   that he could not have formed the requisite intent.

18          And I told you at the beginning and I say it again,

19   not guilty.  Thank you.

20          THE COURT:  All right.  Thank you, Ms. Nair.

21          Rebuttal argument from the Government, Mr. Chiu?

22          MR. CHIU:  Thank you, Your Honor.

23          Reasonable doubt:  Real doubt based on reason and

24   common sense.  And the defense counsel I think made a good

25   point of telling us that you don't leave your common sense at

1   the door when you walked through here.  And all of you have

2   been on this planet long enough to know how the world works.

3           Now, as far as the -- as far as the intoxication

4   instruction, which I apparently have misled you on, let's go

5   ahead and take a look at it, right?

6           Intoxicated means under the -- being under the

7   influence of alcohol or drugs or both.  Intoxication is not

8   itself a legal defense to a criminal charge; however, some

9   degrees of intoxication may prevent a person from having the

10  requisite intent or culpable state of mind to commit the

11  offense and the Government -- that the Government must prove.

12  If you find the defendant was intoxicated to the point that

13  you have a reasonable doubt, one based on reason and common

14  sense, as to whether you had the requisite intent -- or he had

15  the requisite intent or culpable state of mind to commit the

16  offense, then you must find the defendant not guilty of both

17  offenses.

18          On the other hand, if you believe that the defendant

19  was intoxicated to some degree to find that he was capable of

20  and did have the requisite intent or culpable state of mind

21  and you find the Government proved each element of the offense

22  beyond a reasonable doubt, then you may find the defendant

23  guilty of both offenses.  So all of that to say is, being

24  drunk is not a defense.  Okay.  Look, lots of things seem like

25  a good idea when you've been drinking that aren't.  And lots

1   of people do things when they're drinking that they wouldn't

2   otherwise do.  And lots of people do things when they're

3   drinking and say things that they might not remember, but that

4   doesn't mean they don't intend to do them at the time.  That

5   doesn't mean it doesn't count.  A bad decision from drinking

6   does not equal lack of intent.  That equals buyer's remorse.

7         Now, you haven't heard -- you know, the defense

8   doesn't have to prove anything.  All right.  But if you're

9   going to consider whether he was intoxicated to a degree that

10  negates a specific intent, you have to ask yourself, what did

11  we hear?  All you've heard -- you've heard three people say,

12  yeah, he sounds drunk.

13        How drunk?  I don't know.  Nobody said anything

14  about that.  Now, he testified that he drinks a lot.  Now, how

15  much is a lot?  I don't know.  How much does it take for him

16  to, you know, to not remember?  I don't know.  See, we haven't

17  heard anything like that.  All we've heard is some evidence of

18  the wrong thing, which is that he sounds drunk, and that's not

19  a defense.

20        Now, the other thing I've got to -- let's take a

21  look at Section 115, what the Court instructed you on, as to

22  when this threat has to be made.  So what the defense is

23  essentially saying is that, hey this threat came in on a

24  Saturday.  Bernie Sanders wasn't working; therefore, he wasn't

25  being threatened in his official duties.

34

1           All right.  But what does the instruction say?

2           The defendant can be found guilty of this crime if

3    the following facts are proved beyond a reasonable doubt:  The

4    defendant knowingly threatened to assault, kidnap, or murder

5    the official described in the indictment, and the defendant

6    made the threat with either the intent to impede, intimidate,

7    or interfere with such official while he was engaged in the

8    performance of official duties or with the intent to retaliate

9    against such official on account of the performance of

10   official duties.

11          Here's the thing is that he left a voice mail

12   message.  What happens to voice mail messages?  How does that

13   work?  When someone leaves a voice mail message at somebody's

14   office on a Saturday or, you know, whenever business starts up

15   again -- like in this case, people come in on a Monday when

16   business starts up and they listen to the messages, and the

17   point gets -- the point gets across.  I mean, this is

18   nonsensical, this idea that the moment you leave the message

19   is the moment that counts.  What counts is the intent.  The

20   intent was for this message to get to Bernie Sanders at his

21   office when he's doing his job.

22          I mean, because think about this.  Does that mean

23   that, like -- does that mean anything that's a letter or

24   written could never be a threat under this statute because,

25   oh, well, I don't know when they wrote the message?  All I

1  know is I got it at my office.  I mean, it's nonsense.

2          Look.  Let's talk about this issue of intent.  You

3  heard these calls.  They're not like garbled, meandering

4  stories or messages.  They are short, concise, and violently

5  to the point.  So the question you have to ask yourself is not

6  whether he would have done this if he wasn't drinking.  The

7  question you have to ask yourself is this:  Did the person on

8  those calls, at that point, intend to make a threat?  Did that

9  person intend to intimidate and interfere with Senator Sanders

10 in the performance of his duties?

11         MS. NAIR:  Objection, Your Honor, again,

12 misstatement of the law.

13         THE COURT:  All right.  The objection is noted, but

14 overruled.  He can continue.

15         MR. CHIU:  Look, what you heard was three calls over

16 the course of 30 minutes, one line of continuing coherent

17 thought:  I'm going to cut your head off.  We're going to cut

18 your head off.

19         This isn't disagreement.  You know, this isn't

20 someone who is disagreeing with Senator Sanders' policies;

21 this is someone who is threatening to kill him.

22         We don't leave our common sense at the door.  We all

23 know, I think, to have some experience with alcohol, either

24 ourselves or in the folks around us.  And what you've heard is

25 not -- and certainly, there is a -- there is a point at which

someone might be so drunk that they don't realize what they're

doing.  You know, but this isn't -- you know, this isn't a

mortgage fraud case.  You know, this isn't someone who signed

a document who was so drunk and didn't realize the document he

was signing.  This is a threat case.  So the question is, is

this person able to understand and form the intent to

threaten?

You know, the defense used this word, "knowingly,"

"knowingly," "knowingly."  Knowingly means intentionally, on

purpose, not by mistake or accident.  These are no accidents

and these are no mistakes, and your only conclusion here is to

find the defendant guilty.  Thank you.

THE COURT:  All right.  Thank you, Mr. Chiu.

Your verdict, whether guilty or not guilty, must be

unanimous.  In other words, you must all agree.  Your

deliberations are secret, and you will never have to explain

your verdict to anyone.  Each of you must decide the case for

yourself, but only after fully considering the evidence with

the other jurors.  So you must discuss the case with one

another and try to reach an agreement.  While you are

discussing the case, do not hesitate to re-examine your own

opinion and change your mind if you become convinced that you

are wrong, but do not give up your honest beliefs just because

others think differently or because you simply want to get the

case over with.  Remember that in a very real way, you are the

1  judges, judges of the facts.  Your only interest is to seek

2  the truth from the evidence in the case.

3  When you get to the jury room, choose one of your

4  members to act as your foreperson.  The foreperson will direct

5  your deliberations and will speak for you in the courtroom.  A

6  verdict form has been prepared for your convenience, and it

7  reads as follows.  It has the style of the case on top, the

8  actual case number, and then it reads:  Verdict.

9  (1) As to Count 1 of the superseding indictment

10 charging Defendant Robert Francis Pratersch with threatening a

11 federal official in violation of 18 U.S. Code, Section 115,

12 we, the members of the jury, do hereby find the defendant --

13 and there are two options.  Please check only one.  Option one

14 is guilty.  Option two is not guilty.

15 (2) As to Count 2 of the superseding indictment

16 charging Defendant Robert Francis Pratersch with interstate

17 transmission of a threat to injure in violation of

18 18 U.S. Code, Section 875(c).  We, the members of the jury, do

19 hereby find Defendant -- two options only; please check only

20 one.  Option one is guilty.  Option two is not guilty.

21 So say we all.  There is a signature line for the

22 foreperson to sign and date, and then I would ask the

23 foreperson to print their name under their signature.

24 Take the verdict form with you to the jury room.

25 When you have all agreed on the verdict, your foreperson must

38

1    fill in the form, sign it, date it, then carry it.  Then you

2    will return to the courtroom.

3         If you wish to communicate with me at any time,

4    please write down your message or question and give it to the

5    marshal.  The marshal will bring it to me, and I will respond

6    as promptly as possible, either in writing or by talking to

7    you in the courtroom, but I caution you not to tell me how

8    many jurors have voted one way the other at that time.

9         All right.  At this time I'm going to invite

10   Ms. Nair and Mr. Chiu forward to inspect the evidence that's

11   going to go back with the jury and state whether or not you

12   have any objections to that evidence.

13        Ladies and gentlemen of the jury, I have the verdict

14   form, my instructions on the law, and Ms. Darleen will include

15   with that the superseding indictment.

16        Just a couple things.  I'm sure you've figured this

17   out at this point.  But Ms. Boudreau, Mr. Fore, you are our

18   alternates.  You will not be deliberating with the jury, but I

19   assure you that your presence here is critically important.

20   There have been times in the past where we've dropped below

21   the number because of sickness or some sort of emergency

22   outside of the courtroom, and without you here, if we didn't

23   have 12 jurors, we would have to start over.  This is only a

24   two-day trial, but as Ms. Darleen can attest, she was a clerk

25   of court for a trial that lasted over nine months earlier in

1    her career.  So you are playing a very important role here.

2         I'm going to invite -- are there any objections from

3    the Government?

4         MS. NAIR:  May we approach sidebar, Your Honor?

5         THE COURT:  Yes, you may.

6      (At the bench.)

7         MR. CHIU:  This is minor, but on the redacted

8    indictment, the Vermont -- the New Hampshire correction isn't

9    on there.

10        THE COURT:  Okay.  So you want to fix that?

11        MR. CHIU:  Yes.

12        THE COURT:  How long will it take to fix it?  You

13   want to just pen and ink it?

14        MR. CHIU:  I can just pen and ink it.

15        THE COURT:  That's fine.

16        Do you have any objection to that?

17        MS. NAIR:  No, Your Honor.

18        THE COURT:  All right.  Other than that, are there

19   any objections?

20        MS. NAIR:  No, Your Honor.

21        THE COURT:  All right.  Thank you both.  I

22   appreciate that.

23      (In open court.)

24        THE COURT:  All right.  So when you're in the jury

25   deliberation room, please make sure your phones are either off

40

1   or on the airline mode because it's important that the only

2   persons communicating about the case are you and you're not

3   taking outside text messages or phone calls, et cetera.

4           As soon as your lunches arrive -- and it's going to

5   be about 30 minutes until they arrive -- we'll bring them in.

6   And when you hear a knock on the door, please stop your

7   deliberations.  They'll deliver your lunch to you, and once

8   anyone who's not on the jury is out of the room, then please

9   continue your deliberations.

10          If at any time you need anything during your

11  deliberations, please knock on the door.  My marshal -- she's

12  my normal marshal -- Mr. Carter was filling in yesterday,

13  so -- let her know, and she will contact me, and we'll meet

14  whatever needs you have.

15          So at this time Ms. Darleen is going to bring back

16  all of the evidence to you.  You can take your notes now;

17  they're fair game.

18          And, Mr. Fore and Ms. Boudreau, if you'd just stand

19  by for a minute, and we'll get you out of here, but thank you

20  so much.

21          For our 12 jurors, feel free to retire to your

22  deliberation room, and we will patiently await your decision.

23          THE COURTROOM SECURITY OFFICER:  All rise for the

24  jury.

25      (The jury retired from the courtroom at 10:34 a.m.)

41

1          THE COURT:  Oh, you just hold on, just let them by.

2          All right.  Thank you again for your presence --

3    feel free to be seated in the courtroom -- for your presence

4    here today.  If you'd like to leave the pads and pens in your

5    chairs.  Ms. Darleen will tear the pages out and shred them.

6    No one is going to read your notes.  If you want to wait for

7    your lunches, they're about 25 minutes away, you can.  If you

8    just want to get out of here, you're free to leave.

9          But I'd ask you to do this one thing.  Please don't

10   talk about the case until you hear from us.  And let the jury

11   coordinator have the best number to reach you at because there

12   have been moments in the past where during deliberations

13   something goes wrong, we have to replace a juror.  That might

14   mean that one of you would be called in to deliberate on the

15   verdict.  So thank you very much.  I appreciate your service

16   and have a very good day.

17          (Alternate jurors retire from the courtroom.)

18          THE COURT:  All right.  Please be seated, everyone.

19          Mr. Chiu, is there anything additionally from the

20   Government before we take a break here?

21          MR. CHIU:  Not from the United States, Your Honor.

22          THE COURT:  Ms. Nair?

23          MS. NAIR:  Yes, Your Honor, we just want to renew

24   our objection to the instruction that was given that we had

25   requested that was not given, rather.

42

1          THE COURT:  All right.  Your objection is preserved

2    for appellate review, should you choose to seek appellate

3    review.  If there's nothing further, we're going to stand in

4    recess.

5          Both of you have done this many times.  Just please

6    make sure Ms. Darleen can contact you if she needs to contact

7    you, and we'll let you know when we hear something.

8          All right.  Thank you.  Court stands in recess.

9       (Recess at 10:35 a.m., until 12:28 p.m.)

10          THE COURT:  We've got a question from the jury and

11   it is as follows:  "Question on Instruction 10, A threat is a

12   serious question of intent.  How is the word 'serious' defined

13   or used in this context?  Does it mean that the threat is

14   perceived to be serious or taken seriously, or does it mean

15   that the defendant was serious in making the threat intending

16   to call it out?"  Signed, Gail Sheldon.

17          I mean, one of these answers is obviously right and

18   the other one's wrong.

19          So what is your suggestion, Mr. Chiu, if you have

20   one?

21          MR. CHIU:  Um --

22          THE COURT:  Here, let's do this.  Ms. Darleen --

23   come on forward, both of you.  It might stick a little better

24   if you're just not hearing the words fly by you, so if you

25   want to take a look at it.  (B) is the answer.  But the

1   question is, Does Ms. Nair have an objection to my answering

2   that question?

3           MS. NAIR:  I do.  I think that they have to rely on

4   the instruction as given, and then they have to make the

5   determination based on what they were given.

6           THE COURT:  All right.  What's your position,

7   Mr. Chiu?

8           MR. CHIU:  I mean, I think it would be fine to just

9   refer to them -- refer them to the -- I think it would be fine

10  to refer them to the instruction.  I do think that -- I think

11  it would be fine to refer them to the instruction.

12          THE COURT:  So you're not asking that I answer the

13  question, because if they think it's (A), then they obviously

14  don't understand.

15          MR. CHIU:  Don't understand, yes.  Your Honor, I

16  guess I would ask you to answer the question because (A) is a

17  misstatement of the law.  And I think, one way or the other,

18  it can't -- we can't have them relying on --

19          THE COURT:  You're concerned that they might acquit

20  based on an inaccurate interpretation of the law.  Ms. Nair

21  doesn't want the question answered, she wants them to rely on

22  the jury instructions that have already been given.

23          Is that a fair assessment of your positions on this?

24          MS. NAIR:  Because they had the actual -- it's not

25  as though they weren't read the law and they don't have the

44

1   actual law with them to take with them.  So however they

2   interpret it, we have no control on what goes on in their

3   deliberations.  I think they're to be instructed without

4   further clarification on the law that is given to them in

5   front of them.

6           MR. CHIU:  I would actually modify my position in

7   the sense that it's not that I'm concerned that they would --

8   just that they would acquit.  I'm concerned that they would

9   either acquit or convict based upon a mistaken understanding

10  of the law, and that first question is a mistaken

11  understanding of the law.  So that's the -- I think that's my

12  concern.

13          THE COURT:  All right.  Thank you.  If you could

14  hand the -- I guess the problem I'm having with this -- and I

15  understand that this is, obviously, going to be an appellate

16  issue if I do anything short of just telling them to look at

17  the jury instructions, but it's abundantly clear, the reason

18  that the person who's alleged to be the victim didn't testify

19  or that person's reaction wasn't relevant is because it

20  doesn't matter how the threat is perceived or how it's taken.

21  It matters what the intent of the person making the threat

22  was.

23          And that's what the whole debate was on your closing

24  arguments.  The Government's position is that he knew very

25  well what he was doing when he made those statements, and the

45

1  defense's position is there's reasonable doubt based on the

2  introduction of some sort of medication and alcohol cocktail.

3       So I understand what your position is.  All right.

4  And the question they asked:  "Does it mean that the threat is

5  perceived to be serious or taken seriously, or does it mean

6  that the defendant was serious in making the threat?"

7       Number two is the correct answer, but I need to

8  think for a minute.  Give me about five minutes.  I just need

9  to think about this for a minute.

10       MS. NAIR:  And, Your Honor.

11       THE COURT:  Yes.

12       MS. NAIR:  I apologize.  The only thing I would add

13  also is although (B) is correct in the meaning of what they're

14  trying to get at, it's not a correct statement of the law

15  either.  And that is the issue.  So we maintain our objection,

16  and that's just where I stand on that issue.

17       THE COURT:  Okay.  I thank you for your argument.

18  We're going to take about a five-minute recess, and then I'll

19  get back to the jury.  Thank you.

20       (Recess at 12:33 p.m., until 12:55 p.m.)

21       THE COURT:  All right.  I'm going to listen to you

22  on what you want to do.  I found significant instruction on

23  this, but not from our circuit.  From the Ninth, the Eighth,

24  the Third, and the Seventh.  So here's the part of the

25  instruction that I would propose to just read to them again.

1          A threat is a serious expression of intent to

2   inflict bodily injury or murder made under the circumstances

3   that would cause apprehension in a reasonable person as

4   distinguished from mere idle or careless talk, exaggeration,

5   or something said in a joking manner.

6          MR. CHIU:  I don't have any objection to that, Your

7   Honor.

8          THE COURT:  That's the instruction.

9          MS. NAIR:  That's the instruction, yes, Your Honor.

10          THE COURT:  However, just so you know, I think the

11   Eighth Circuit knocked it out of the park, and it's a clear

12   instruction.  There are four different versions, but they all

13   say the same thing.

14          Whether a particular statement may properly be

15   considered to be a threat is governed by an objective

16   standard, whether a reasonable person would foresee that the

17   statement would be interpreted by those to whom the maker

18   communicates the statement as a serious expression of intent

19   or harm to assault.

20          I think that's better, but that's not our

21   instruction in the Eleventh Circuit.

22          So any objections from the Government as to my

23   answering the question by reading them this part of the

24   instruction?

25          MR. CHIU:  No, Your Honor.

47

1        THE COURT:  Ms. Nair, any objection?

2        MS. NAIR:  No, Your Honor.

3        THE COURT:  All right.  Let's bring them in.

4        THE COURTROOM SECURITY OFFICER:  All rise for the

5    jury.

6      (The jury entered the courtroom at 12:57 p.m.)

7        THE COURT:  Welcome back, ladies and gentlemen.

8    Feel free to be seated in your chairs.  Once everyone is

9    seated and comfortable, we'll continue moving forward.

10        All right.  Please be seated in the courtroom.

11        Ladies and gentlemen of the jury, you have asked the

12    following question:  Question on Instruction No. 10; "A threat

13    is a serious expression of intent.  How is the word 'serious'

14    defined or used in this context?  Does it mean that the

15    threat -- does it mean the threat is perceived to be serious

16    or taken seriously, or does it mean that the defendant was

17    serious in making the threat" -- and in quotes -- "'intending

18    to call it out?'"  Signed by the foreperson, dated 4/30/2019.

19        So let me read you the specific part of the

20    instruction, Instruction No. 10, that answers that question.

21        A threat is a serious expression of intent to

22    inflict bodily injury or murder made under the circumstances

23    that would cause apprehension in a reasonable person as

24    distinguished from mere idle or careless talk, exaggeration,

25    or something said in a joking manner.

48

1          So I hope that answers your question, and I would

2    invite you to continue your deliberations.  We will patiently

3    wait for your decision.  Thank you, ladies and gentlemen.

4          THE COURTROOM SECURITY OFFICER:  All rise for the

5    jury.

6          THE COURT:  And by the way, that language is in

7    Instruction No. 10 if you want to read it again in your

8    instructions in the jury deliberation room.  Thank you.

9          Darleen, this will be Court Exhibit No. 1.

10      (Court's Exhibit No. 1 was marked for the record.)

11      (The jury retired from the courtroom at 12:59 p.m.)

12          THE COURT:  All right.  Please be seated.  Is there

13    anything further from the Government?

14          MR. CHIU:  No, Your Honor, thank you.

15          THE COURT:  Ms. Nair, from the defense?

16          MS. NAIR:  No, Your Honor.  Thank you.

17          THE COURT:  All right.  Stay close by.  We'll see

18    you soon.  Court's in recess.

19      (Recess at 12:59 p.m., until 2:25 p.m.)

20          THE COURT:  I've been informed that the jury has

21    reached a verdict.  Is there anything to take up with the

22    Government before we bring the jury in?

23          MR. CHIU:  No, Your Honor.

24          THE COURT:  Ms. Nair?

25          MS. NAIR:  No, Your Honor.

49

1          THE COURT:  All right.  Let's bring the jury in.

2          THE COURTROOM SECURITY OFFICER:  All rise for the

3     jury.

4        (The jury entered the courtroom at 2:26 p.m.)

5          THE COURT:  All right.  Welcome back ladies and

6     gentlemen.  Feel free to be seated once you're at your chairs.

7          All right.  Please be seated in the courtroom.  Who

8     is our foreperson?  All right.  Ma'am, without telling me what

9     the jury's verdict is, have you reached a verdict so say you

10    all?

11         JUROR:  Yes, Your Honor.

12         THE COURT:  All right.  If you would be kind enough

13    to fold the verdict form in half and deliver it to my deputy

14    marshal and she'll bring it to me.  Sometimes these are more

15    complicated than this verdict form is, so I have to read it

16    and make sure it's in a proper legal form, and then I'll have

17    my deputy clerk of court read it into the record.

18         All right.  If both counsel and the defendant would

19    please stand.  Ms. Darleen, if you'd be kind enough to read

20    the verdict into the record.

21         THE COURTROOM DEPUTY:  In the case of United States

22    of America v. Robert Francis Pratersch, as to Count 1 of the

23    superseding indictment, guilty; as to Count 2 of the

24    superseding indictment, guilty.  Signed Gail Sheldon,

25    foreperson, dated April 30, 2019.

50

1           THE COURT:  All right.  Feel free to be seated.

2           Mr. Chiu, would you request that I poll the jury at

3      this time?

4           MR. CHIU:  No, Your Honor.

5           THE COURT:  Ms. Nair?

6           MS. NAIR:  Yes, Your Honor.

7           THE COURT:  All right.  If you would poll the jury,

8      Ms. Darleen?

9           THE COURTROOM DEPUTY:  Yes, Judge.

10          Jacob Berkauzer, is this your verdict?

11          JUROR:  Yes.

12          THE COURTROOM DEPUTY:  Catherine Bolling, is this

13     your verdict?

14          JUROR:  Yes.

15          THE COURTROOM DEPUTY:  Emma Harris, is this your

16     verdict?

17          JUROR:  Yes.

18          THE COURTROOM DEPUTY:  Gail Sheldon, is this your

19     verdict?

20          JUROR:  Yes.

21          THE COURTROOM DEPUTY:  Kerry Augustin, is this your

22     verdict?

23          JUROR:  Yes.

24          THE COURTROOM DEPUTY:  Janice Clift, is this your

25     verdict?

51

1            JUROR:  Yes.

2            THE COURTROOM DEPUTY:  Maribelys Sanchez Gonzalez,

3  is this your verdict?

4            JUROR:  Yes.

5            THE COURTROOM DEPUTY:  Joseph Boone, is this your

6  verdict?

7            JUROR:  Yes.

8            THE COURTROOM DEPUTY:  Kara Miedona, is this your

9  verdict?

10            JUROR:  Yes.

11            THE COURTROOM DEPUTY:  Tyler Basant, is this your

12  verdict?

13            JUROR:  Yes.

14            THE COURTROOM DEPUTY:  David Collins, is this your

15  verdict?

16            JUROR:  Yes.

17            THE COURTROOM DEPUTY:  Sonia Edwards, is this your

18  verdict?

19            JUROR:  Yes.

20            THE COURT:  Ladies and gentlemen, I wish to thank

21  you for your time and consideration of this case.  I also wish

22  to advise you of some very special privileges enjoyed by

23  jurors.  No juror can ever be required to talk about the

24  discussions that occurred in the jury room, except by court

25  order.  For many centuries our society has relied upon juries

52

1   for consideration of difficult cases.  We have recognized for

2   hundreds of years that a jury's deliberations, discussions,

3   and votes should remain their private affair as long as they

4   wish it; therefore, the law gives you a unique privilege to

5   speak to no one about your work.  It will be up to you to

6   decide whether to preserve your privacy as a juror.

7           I want to thank you again for your time.  I know

8   that you have important things that require your attention

9   outside of this courtroom, so two days are a very big part of

10  your life, and I want to thank you for giving us your time and

11  attention for these two days.

12          I'm going to have my deputy marshal escort you back

13  downstairs.  I will be down to answer any questions you have

14  about the overall experience, but we're going to get you out

15  of here as soon as possible.  I don't want you to get caught

16  in Orlando traffic.  So I'll see you in just a few minutes,

17  and we'll get you out of here pretty quickly.

18          Take your time in gathering your items in the jury

19  deliberation room.  As for pads and pens, just leave them.

20  Ms. Darleen will rip the pages out that you wrote on, and they

21  will all be shredded today.  No one will ever read your notes.

22  So I'll see you soon.  Thank you again for your honorable

23  service.

24          THE COURTROOM SECURITY OFFICER:  All rise for the

25  jury.

53

1          (The jury retired from the courtroom at 2:29 p.m.)

2               THE COURT:  All right.  Please be seated.

3               Mr. Chiu, are there any requests for changes with

4     regard to the defendant's status?

5               MR. CHIU:  No, Your Honor, not in regard to his

6     status with regard to detention or release.

7               THE COURT:  Ms. Nair, there anything you want to

8     take up today before we end the session?

9               MS. NAIR:  No, Your Honor.

10              THE COURT:  All right.  He will remain in his

11    current status.  The sentencing date is set for July 16, 2019,

12    at 9:00 a.m.

13              Mr. Chiu, did you hear and understand that?

14              MR. CHIU:  Yes, Your Honor.

15              THE COURT:  Ms. Nair?

16              MS. NAIR:  Yes, Your Honor.

17              THE COURT:  Most importantly, Mr. Pratersch, if

18    you'd be kind enough to stand next to your attorney.  Did you

19    hear and understand the sentencing date that you have of

20    July 16, 2019, at 9:00 a.m.?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  All right.  A couple of things.  You

23    want to make sure you're early on that date.  You have a very

24    effective attorney who is going to argue to the extent that

25    she's able for a certain range or leniency from the Court.

54

1   Everything you do between now and that date is going to be

2   important because you're going to be potentially under a

3   microscope.

4          Also, if you arrive late or don't arrive at all for

5   sentencing, you're going to make your attorney's job much more

6   difficult in that regard.  Mr. Pratersch, did you hear and

7   understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Mr. Pratersch, we'll see you

10  on that date.  The defendant is hereby adjudicated guilty, and

11  we will see him here on July 16, 2019, at 9:00 a.m.  The Court

12  stands in recess.  Thank you.

13         MS. NAIR:  Thank you.

14     (WHEREUPON, this matter was concluded at 2:31 p.m.)

15                          *   *   *

16                  CERTIFICATE OF REPORTER

17

18  I certify that the foregoing is a correct transcript of the
    record of proceedings in the above-entitled matter.

19

     _/s/ Suzanne L. Trimble_____          10/10/19
20   Suzanne L. Trimble, CCR, CRR, RPR            Date
     Official Court Reporter
21

22

23

24

25