1

```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         ORLANDO DIVISION

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,       :
                                :
                                :   Case No.:
         Plaintiff,             :   6:19-cr-26-Orl-41TBS
                                :
vs.                             :
                                :   Orlando, Florida
ROBERT FRANCIS PRATERSCH,       :   August 23, 2019
                                :   9:31 a.m.
                                :
         Defendant.             :
                                :
- - - - - - - - - - - - - - - -X

                    TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE CARLOS E. MENDOZA
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

  Counsel for Plaintiff:       Vincent Chiu

  Counsel for Defendant:       Alisha Marie Nair



Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

Court Reporter:   Suzanne L. Trimble, CCR, CRR, RPR
                  Federal Official Court Reporter
                  401 West Central Boulevard, Suite 4600
                  Orlando, Florida 32801
                  e-mail: trimblecourtreporter@gmail.com
```

P R O C E E D I N G S

    THE COURTROOM DEPUTY: United States of America v. Robert Francis Pratersch, Case No. 6:19-cr-26.

    Counsel, please state your appearances for the record.

    MR. CHIU: Good morning, Your Honor. Vincent Chiu on behalf of the United States. I'm joined by F.B.I. Special Agent Nestor Mercado.

    THE COURT: Good morning. Mr. Chiu.

    MS. NAIR: Good morning, Your Honor. Alisha Marie Nair here on behalf of Mr. Pratersch.

    THE COURT: Good morning, Ms. Nair. If you would be kind enough to approach the podium with your client, we're going to get started.

    THE COURTROOM DEPUTY: Sir, please come forward. Please raise your right hand.

    (Robert Francis Pratersch sworn.)

    THE COURT: All right. Please state your full name for the record.

    THE DEFENDANT: Robert Francis Pratersch.

    THE COURT: Mr. Pratersch, are you currently under the influence of alcohol, prescribed medication, or any narcotics that may affect your ability to understand the proceedings here today?

    THE DEFENDANT: No, sir.

1  THE COURT:  All right.  On April 30, 2019, a jury
2  found you guilty of Count 1 of the superseding indictment
3  charging you with threatening a federal official in violation
4  of Title 18, U.S. Code, Section 115 and Count 2 of the
5  superseding indictment charging you with interstate
6  transmission of a threat to injure in violation of Title 18,
7  U.S. Code, Section 875.  The Court previously accepted the
8  jury verdict and has adjudged you guilty of those offenses.
9  We've now reached the stage in the proceedings where
10 it is my duty to address several questions to you, your
11 attorney, and counsel for the Government.  Have you had a
12 chance to review the presentence investigation report prepared
13 in anticipation of today's hearing?
14  THE DEFENDANT:  Yes, sir.
15  THE COURT:  Have you had a chance to review that
16 with the advice of your counsel?
17  THE DEFENDANT:  Yes, sir.
18  THE COURT:  Do you need more time to go over that?
19  THE DEFENDANT:  No, sir.
20  THE COURT:  All right.  This is a question for your
21 attorney.
22  Ms. Nair, are there any unresolved objections to the
23 guideline calculations or the factual findings?
24  MS. NAIR:  No, Your Honor.
25  THE COURT:  All right.  Any objections from the

1  United States?

2          MR. CHIU:  No, Your Honor.

3          THE COURT:  All right.  There being no objections to
4  the factual findings and guideline calculations contained in
5  the report, the Court will adopt those statements as its
6  findings of fact and determines that the advisory guidelines
7  are as follows:  Total offense level 14, criminal history
8  category I, 15 to 21 months imprisonment, one to three years
9  supervised release, no restitution here, a fine range of 7,500
10 to $75,000 and a $200 special assessment.

11         All right.  I've reviewed everything that's been
12 filed on CM/ECF.  At this point, Ms. Nair, is there any
13 additional evidence in mitigation you would like to present to
14 the Court before I hear argument on sentence?

15         MS. NAIR:  I just would like to make the Court aware
16 who is present in the court today, and that is his brother,
17 his sister-in-law, and his nephew.

18         THE COURT:  Some of whom testified at trial I
19 recall.

20         MS. NAIR:  His brother and his sister-in-law did
21 testify at trial, yes, Your Honor.

22         THE COURT:  All right.  Mr. Pratersch, would you
23 like to make a statement to the Court before I hear from the
24 Government?

25         THE DEFENDANT:  Yes, Your Honor.  It's my

1 understanding you have read my letter.  I would also like to
2 add my sincere apologies to Mr. Sanders, his staff, and your
3 court, and you'll never see me in here again.  Thank you.
4        THE COURT:  All right.  Thank you for your
5 statement.  Feel free to be seated at counsel table.
6        Will the Government be presenting any evidence in
7 aggravation before I hear argument?
8        MR. CHIU:  No, Your Honor.
9        THE COURT:  Ms. Nair, would you like to make a
10 sentencing argument?
11        MS. NAIR:  Mr. Pratersch respectfully recommends the
12 Court accept the probation officer's recommendation.  Custody
13 is not necessary to get the point across to Mr. Pratersch.
14 When speaking with the Government and probation at our
15 position of the parties meeting, my statement was, although I
16 do not often agree with the prosecution's actions in
17 prosecuting individuals, here I cannot say that I adamantly
18 disagree with their stance, and that is because they saved his
19 life.  Prior to Mr. Pratersch being arrested he was depressed.
20 He was an alcoholic.  And he was drinking himself to death.
21 He had distanced himself from all family and basically was in
22 a state of wanting to die.
23        After the Court got involved with his case and
24 pretrial services started interacting with Mr. Pratersch, he
25 then began to liven up a bit.  After our office got involved

1  with him, he then started going to counseling.  He is now a
2  recovering alcoholic, and the information that we submitted to
3  the Court is that he received three chips so far, and he is
4  steadily on a path towards recovery.  He also has reconnected
5  with family.  And the Court was able to see some of the past
6  history of Mr. Pratersch with his family.  He is a loving
7  individual.
8          We were a little concerned when we saw the
9  presentence investigation report that talked about a domestic
10 violence incident with his ex-wife and knowing the Court's
11 position on individuals who have a history of domestic
12 violence and then are here on some sort of violent charge as
13 well, it can be concerning.  However, the Court was also able
14 to see a letter after we found his ex-wife who stated that the
15 way that it happened in the police report is not actually what
16 occurred in their home.  And she was very remorseful about her
17 stating that to the police because after the incident she
18 tried to recant her statements but was unable to because the
19 police told her, you stated what you stated at the time, and
20 that is what we have to officially report, and we're not able
21 to take those statements back.
22         But the Court was able to also see in the
23 presentence investigation report that that did not result in a
24 conviction.  The assault he pled nolo contendere and got --
25 excuse me.  It did result in a conviction, but he pled nolo

1  contendere because there was a domestic dispute inside the
2  home, but the domestic dispute arose from his ex-wife cheating
3  on him, and she wanted to get him in more trouble than he
4  already was in when the officers arrived at their home.  And
5  so her recantation of the facts of that case are important
6  because it shows that Mr. Pratersch is not a violent
7  individual as he is portrayed in the original police report.
8         His family came in and testified and said they don't
9  know him to be a violent individual.  He is a loving, caring
10 individual who cares for stray cats.  That is his character.
11 So when you look back on all of Mr. Pratersch's
12 characteristics, you see an individual who through propaganda
13 from media, somehow in a subconscious state of being, made
14 calls to someone whom he truly regrets.
15        And you heard from Mr. Pratersch during trial as
16 well and you just heard from him today.  This is not the
17 individual -- the character of Mr. Pratersch is not the
18 individual who was on those phone calls, and when I had an
19 opportunity to play those for him, his head fell, and you
20 could see the sorrow in his eyes for hearing his own voice
21 make those statements.
22        So we would ask that, if we are sending a message to
23 Mr. Pratersch, that custody is not necessary to get the
24 message across.  And I find it interesting because it's not
25 often that probation goes out and makes a recommendation of a

non-incarcerative sentence. This is actually the first time in my four years of being in this courthouse that I have seen them make such a recommendation, especially when the guidelines call for 15 to 21 months.

We ask that the Court sentence Mr. Pratersch to a term of probation and that he be allowed to continue his recovery, and that you will not see him in this courthouse again. Thank you.

THE COURT: All right. Thank you for your argument. Would the Government like to make a sentencing argument?

MR. CHIU: Yes, Your Honor. Your Honor, this Court is aware of the nature of the offense. So I won't belabor that. A couple of things I want to point out really here are the nature and circumstances of the offense. The threats are gruesome, and not only are they gruesome they're antisemitic, they're misogynistic, and they're deeply troubling. And I do think that deterrence is a factor that comes into play, not just specific deterrence with regard to the defendant, but general deterrence with regard to people that would be involved in this type of conduct in general. And while I understand that the concept of general deterrence is at times I think questionable, I think in this type of case with this type of conduct it is the type of conduct that is imminently deterrable with consequences for others, because these aren't crimes of desperation. They're not crimes of -- you know,

1   they're not crimes of sort of livelihood.  They're sort of
2   crimes to, you know -- that people commit simply for their own
3   perverse satisfaction for no apparent reason, but they are
4   designed to sow chaos, and, you know, as the Court heard at
5   trial, you know, what happens is when -- you know, when people
6   like the defendant make these types of threats, it creates a
7   whole chain of events, you know, that really causes a lot of
8   chaos within the Government.  And, frankly, people should be
9   able to do their jobs without being threatened.
10          In light of that, I would recommend the Court
11  sentence Mr. Pratersch at the low end of the guidelines.  I do
12  think if the Court is going to vary I would recommend the
13  Court vary into -- you know, into zone C and still include
14  some period of incarceration with that sentence because
15  otherwise there really is no deterrent value and there really
16  is no just punishment for what happened here.  Thank you.
17          THE COURT:  All right.  Thank you.  I'm going to
18  take your arguments under consideration.  I need to deliberate
19  for a moment, and I'll be back in about ten minutes to impose
20  the sentence.  Court stands in recess.
21      (Recess at 9:41 a.m., until 9:48 a.m.)
22          MS. NAIR:  Would you like us at the podium, Your
23  Honor.
24          THE COURT:  No.  That's fine.
25          The Court has asked the defendant why judgment

1  should not now be pronounced and after hearing the defendant's
2  response, the Court has found no cause to the contrary.  The
3  parties have made statements in their behalf or have waived
4  the opportunity to do so, and the Court has reviewed the
5  presentence report.
6         This is not the first one of these that I've seen.
7  In fact, I've only seen two since I arrived here in 2014.  The
8  other case was 15-cr-23 involving a 24-year-old African
9  American male named Jeremy Addison.  I eventually recused
10 myself from the case because the medical report came back, and
11 I have medical people in my family, I had to reduce myself,
12 but I took the plea, and I was willing to go along with it.
13        Mr. Addison was being housed in the Volusia County
14 Jail and decide he was unhappy with the then President Obama.
15 He sent three different letters from the jail threatening his
16 life.  One of the letters included a white powdery substance
17 that he claimed was anthrax, tested, turned out not to be, but
18 the letters never made it out of the jail.  They were
19 intercepted by law enforcement.  He had a pretty bad criminal
20 history and had some mental health issues.  And during the
21 course of the litigation what delayed the case somewhat was he
22 had to get a mental health evaluation, we had to have a
23 hearing and a competency determination.  Eventually he was
24 found to be competent.
25        He entered into a plea agreement.  And after all of

1  the calculations were done, he had a range -- and I have the
2  presentence investigation report and the recommendation
3  here -- of 84 to 105 months. That was his range, and his
4  range was so high because he had a significantly worse
5  criminal history than Mr. Pratersch has.
6  So he accepted responsibility. His letters never
7  made it out of the jail. And unlike your client, he did not
8  testify untruthfully in front of a jury. He got the bottom of
9  the guidelines notwithstanding the fact that they requested a
10 downward variance. I didn't sentence him, but that's what
11 happened. In all likelihood, but for the recusal, that
12 probably would have been in the ballpark of what I was looking
13 at.
14 So we have a different situation here. His threats
15 actually made it to Bernie Sanders' office. He didn't accept
16 responsibility for what he did. And he's not entitled to
17 those deductions. And he testified under oath in a manner
18 that the jury didn't find credible. Frankly, it's
19 irreconcilable with what he told law enforcement per the
20 report.
21 His statement to law enforcement was the defendant
22 stated he sometimes goes on rants when he drinks too much
23 alcohol. Pratersch stated when he watches the news he
24 sometimes gets mad about the way our country is going,
25 especially with communists trying to change our way of life.

1   Pratersch stated that he had no plans to kill Senator Sanders
2   or anybody.  He then stated, quote, "It is not like I was
3   going to get on an airplane and try to kill someone.  I barely
4   got enough disability money to buy groceries," closed quote.
5           So I understand that, you know, we're trying to
6   achieve some kind of fairness across the board.  I can't think
7   of a reason why he should get a downward variance at all,
8   especially in light of the fact, I'm very sensitive to this,
9   that we have that young man serving 84 months who accepted
10  responsibility, entered a plea agreement, and whose
11  correspondence never made it to the recipient.
12          And I think the reason probably the jury didn't buy
13  your testimony that you were blacked out and had no idea at
14  what you were doing is because I sort of made a list of what
15  you would had to have done in order to call that senator's
16  office.  First of all, you had to decide to do it.  After you
17  decide to do it, how do you contact a senator or reach out to
18  a senator?  You have to look it up on the Internet or on your
19  phone.  And if you're going to call the senator, you have to
20  make a decision, well, which senator's office am I going to
21  call, because Senator Sanders doesn't just have an office in
22  Washington DC, he has offices all throughout Vermont.  So you
23  have to make the conscious decision to pick what office am I
24  going to call.  You call during work hours.  And once you
25  decide to call and enter that number, then you have to get

1 through the menu. Now, during the course of the proceedings
2 the call was played to me. And I don't think anyone here is
3 unaware of what it's like trying to get ahold of a Congress
4 person or a senator. You have a menu you have to get through.
5 Is this for constituent services? Are you looking for a
6 letter to a military academy? Are you looking for call back
7 from the senator or from one of the senator aides? And when
8 you go through that entire process, then at some point you get
9 to leave the voicemail message.
10         So your testimony that you were blacked out, had no
11 idea what you were doing, have no memory of it, first of all,
12 it's inconsistent with what you told law enforcement.
13 Secondly, it's belied by the process you have to go through to
14 leave the message.
15         So I don't think you're the worst guy in the world,
16 but I don't think we really need to tolerate people targeting
17 others because they disagree with their political viewpoint.
18 I think it's an attack on the foundation of what this country
19 was founded on. I remember when I was a kid the civics
20 teachers used to tell us, I disagree with you with every fiber
21 of my being, but I will fight to the death to protect your
22 right to say it. And I think that's being damaged by things
23 like this. So I take it very seriously.
24         And although I take you at face value you weren't
25 going to fly up there and do anything. Maybe you didn't have

1  the wherewithal to do it.  But when you make that phone call,
2  everything gets turned on its head.  You have all of these
3  federal law enforcement agencies that have to make take it
4  seriously.  They have to investigate it.  They have to come
5  down and talk to you.  They have to begin a federal
6  prosecution and do all of these things.
7          And I would tell you strategically I don't criticize
8  your decision to go to trial, and you're not being penalized
9  for it, but, you know, the Eleventh Circuit is pretty clear
10 you're not entitled to acceptance of responsibility deductions
11 after you plead not guilty and go to trial, especially in this
12 case when you testified in a manner that I think the
13 Government could probably prove was not truthful.  You know,
14 I'm not encouraging them to go forward with another
15 prosecution.  I don't think that would be a good idea, quite
16 frankly.
17         But I look desperately in all of these cases to try
18 to find a reason to downward vary.  In my periphery I have
19 Mr. Addison who got the bottom of the guidelines after doing
20 everything he possibly could to try to earn a downward
21 variance.  Now, I didn't sentence him, and I'm not being
22 critical of the sentence, but in light of that I can't find a
23 reason to downward vary in this case.  And I think your lawyer
24 has done everything she possibly could to try to defend you
25 under these circumstances, but, again, I just can't in good

1  conscience -- I can't live with myself knowing that
2  Mr. Addison is serving 84 months in prison for pretty much the
3  same thing you did -- he has a worse criminal history.  That's
4  why his exposure was greater -- while you're just going to
5  walk out of here with a slap on the hand when you both caused
6  the same amount of chaos and threats, and, again, your threats
7  made it to Bernie Sanders' office.  His never made it out of
8  the Volusia County Jail.
9         So I wish you well in the future, but there has to
10 be consequences, and if there aren't consequences, then more
11 people are going to do this or you could do it again and I
12 hope you won't.
13        So Pursuant to Title 18, U.S. Code, Sections 3551
14 and 3553, it is the judgment of the Court that the defendant
15 is hereby placed in the Bureau of Prisons for a term of 15
16 months.  After your 15 month term you shall be placed on
17 supervised release, and the supervised release shall be for a
18 period of one year.
19        While on supervised release, you shall participate
20 in a substance abuse program, outpatient and/or inpatient, and
21 follow the probations officer's instructions regarding the
22 implementation of this directive.  Further, you shall
23 contribute to the costs of these services not to exceed an
24 amount determined reasonable by the probation office's sliding
25 scale for substance abuse treatment services.  During and upon

1 the completion of this program, you are directed to submit to
2 random drug testing.
3 You shall participate in a mental health treatment
4 program, outpatient and/or inpatient, and follow the probation
5 officer's instructions regarding the implementation of this
6 directive. Further, you shall contribute to the cost of these
7 services not to exceed an amount determined reasonable by the
8 probation office's sliding scale for mental health treatment
9 service.
10 Having been convicted of a qualifying felony, you
11 must cooperate in the collection of DNA as directed by
12 probation.
13 You must refrain from any lawful use of a controlled
14 substance. You must submit to drug testing within 15 days of
15 placement on supervision and at least two periodic drug tests
16 thereafter as directed by probation. You must submit to
17 random drug testing not to exceed 104 tests her year.
18 There will not be a fine imposed based on the
19 financial status of the defendant.
20 Are there any forfeiture matters to consider form
21 the United States?
22 MR. CHIU: No, Your Honor.
23 THE COURT: It is further ordered the defendant
24 shall pay a special assessment totalling $200, $100 per
25 felony, which shall be due immediately.

1     After considering the advisory sentencing guidelines
2  and all of the factors identified in Title 18, U.S. Code,
3  Sections 3553(a)(1) through (7), the Court finds that the
4  sentence imposed is sufficient, but not greater than
5  necessary, to comply with the statutory purposes of
6  sentencing.
7     The Court having pronounced sentence, does counsel
8  for defendant have any objections to the sentence imposed or
9  to the manner in which the Court imposed sentence, other than
10 those previously stated for the record?
11     MS. NAIR:  No, Your Honor.
12     THE COURT:  Any objections from the United States?
13     MR. CHIU:  No, Your Honor.
14     THE COURT:  All right.  Do you have any requests
15 with regard to surrender, Ms. Nair?
16     MS. NAIR:  We do, Your Honor.  We would ask for
17 self-surrender.  We would also request a placement at Coleman
18 for familial relations.
19     THE COURT:  Any objections from the Government on
20 that?
21     MR. CHIU:  No, Your Honor.
22     THE COURT:  All right.  What is my date?
23     THE COURTROOM DEPUTY:  September 20th before
24 2:00 p.m., Your Honor.
25     THE COURT:  All right.  He shall report on or before

1  September 20th at 2:00 p.m.
2           Mr. Pratersch, did you hear and understand that?
3           THE DEFENDANT:  Yes, sir.
4           THE COURT:  All right.  So at or before 2:00 p.m. on
5  September 20th.  And there will be a recommendation in the
6  judgment and sentence that to be near his family the Court is
7  recommending he be placed in Coleman or as close to Coleman as
8  possible.
9           Anything further from the United States?
10          MR. CHIU:  No, Your Honor.
11          THE COURT:  Anything further from the defense?
12          MS. NAIR:  No, Your Honor.
13          THE COURT:  All right.  One more thing.  You do have
14 the right to appeal from this judgment and sentence within
15 14 days from the entry of judgment.  Failure to appeal within
16 that 14-day period shall constitute a waiver of your right to
17 appeal.  The Government may also file an appeal from this
18 sentence.
19          You are also advised that you are entitled to the
20 assistance of counsel in taking an appeal, and that if you are
21 unable to afford a lawyer, one will be provided for you.
22          If you are unable to afford the filing fee, the
23 Clerk of the Court will be directed to accept notice of appeal
24 without such fee.
25          I do hope I never see you again.  I wish you good

1  luck, sir.

2          Court's in recess.

3      (WHEREUPON, this matter was concluded at 9:58 a.m.)

4                        *   *   *

5                  CERTIFICATE OF REPORTER

6
   I certify that the foregoing is a correct transcript of the
7  record of proceedings in the above-entitled matter.

8
    _/s/ Suzanne L. Trimble_____          10/10/19
9   Suzanne L. Trimble, CCR, CRR, RPR        Date
    Official Court Reporter
10